[EDITOR'S NOTE: This case is unpublished as indicated by the issuing court.]
MEMORANDUM OF DECISION
The Plaintiff in this case is a judgment creditor of Connecticut Popular Bank [the Bank] that was being organized under the laws of the State of Connecticut in 1988.
The defendants are two of the original organizers of the Bank who, on March 11, 1988, issued an Offering Circular [Ex. B] to persons interested in investing in the Bank.
The Plaintiff was an employee of the Bank and by virtue of his contract of employment was awarded by an arbitration panel the sum of $16,443.24. The award was confirmed on February 19, 1991. (D.N. CV 90-305888-S, Mulvey, S.T.R., and Judgment rendered thereon [Ex. D].)
The Plaintiff seeks satisfaction of his judgment from the Defendants, relying upon Page 11 of the Offering Circular which states as follows [Ex. B]:
 "Pending receipt of a Final Certificate of Authority, substantially all of the unused proceeds will be deposited in an escrow account as described above in `Subscription Procedure'.
 If the Bank fails to obtain a Final Certificate of Authority, it will be dissolved in accordance with Connecticut law, and all available funds received from non-Organizer subscribers will be returned to them following the date of dissolution and performance of statutory liquidation procedures. Organizational and pre-opening expenses, the expenses of this Offering, enforceable claims of creditors, and debt incurred to pay such CT Page 11798 expenses and claims, will be paid from interest accrued and payable on funds received from subscribers and, to the extent such interest is insufficient to pay such expenses, by the Organizers. Interest accrued on funds received from subscribers, to the extent not applied to pay such expenses and claims, will be paid to subscribers. Accordingly, potential investors should consider the probability that subscribers will not receive interest on funds advanced by them."
The Bank did not complete its organization nor did it receive a Final Certificate of Authority.
The Defendants testified that page 11 of the Offering was never discussed with the Plaintiff who became the Bank's President and CEO. The Plaintiff received a copy of the Offering Circular before his contact of employment was approved on May 3, 1988. The Employment Agreement was signed April 30, 1988.
The Defendants testified that the Bank is insolvent. The Defendants admit that the Bank has been dissolved. Dissolution was by forfeiture in 1992.
The Employment Contract was signed with the Plaintiff because the Bank required a talented person to act as President and CEO before soliciting subscribers for the stock. The process of issuing a Final Certificate of Authority is carefully supervised by the State Banking Commission.
The Plaintiff testified that he had copies and was aware of the Offering Circular and also that it was his responsibility to supervise and account for all funds of the subscribers of the stock. The contract of the Plaintiff's employment is submitted to the Banking Commission for the State of Connecticut. The Plaintiff assumed his office of President, CEO and director and, with other directors, tried to sell stock in the corporation to raise $5,000,000.
The Offering Circular was provided to the Plaintiff, an experienced Banker, in draft form. He provided input to its final draft. Insofar as the Plaintiff was responsible for the custody of all subscribers of stock funds, he had to be aware of the purpose and operational effect of the Offering Circular. He was the person CT Page 11799 in charge of all funds contributed and disbursed during organization.
The section of the Offering, at page 11 [Ex. B], upon which the Plaintiff relies, covers the use of proceeds received by the Bank in organization from the subscribers of stock. The purpose of this paragraph in the Offering was to demonstrate to potential subscribers the various anticipated costs and disbursements. The statement further assures the subscribers of stock that pending receipt of a Final Certificate of Authority, substantially all of the unused proceeds will be deposited in an escrow account to pay claims in organization. The organizers included the paragraph concerning enforceable claims of creditors to give assurances to the subscribers of the stock that they would not be personally liable for any claims arising out of an investment in the bank and hat they would receive their investments back excepting for any interest accruing from their investment.
The Plaintiff's contract of employment was negotiated without any reference to the Offering Circular although the Plaintiff asserts he was aware of the offering statement. The Offering Circular was never given to any potential creditors to induce them to do business with the Bank in organization. The Offering Circular was given to potential purchasers of stock. It was never given to persons either selling goods or providing services for the corporation.
The Offering Circular described two classes of person with regard to monies received; the subscribers were to get their investment back and the organizers would be responsible for any claims made against the Bank from either interest earned on the subscriber's investment or personally. The use of the proceeds of the funds to be invested was clearly as an inducement to investors to purchase common stock to raise the necessary capital.
The Offering Circular was not given to the Plaintiff to induce him to enter into his contract of employment. The Plaintiff did not demonstrate that he relied upon the Offering Circular or the paragraph relating to creditors before he signed his contract of employment. There was no personal guarantees signed by the organizers, the Defendants in this action. [See Special Defense.]
The Plaintiffs are asserting a form of guaranty with respect to the Employment Contract by refering [referring] to two lines in the Offering Circular under the use of proceeds. CT Page 11800
 "Restatement (Second, Contracts § 89C (Tent. Ed. 1973 provides: `GUARANTY. A promise to be surety for the performance of a contractual obligation, made to the obligee, is binding if (a) the promise is in writing and signed by the promisor and recites a purported consideration; or (b) the promise is made binding by statute; or (c) the promisor should reasonably expect the promise to induce action or forbearance of a substantial character on the part of the promisee or a third person, and the promisee does induce such action or forbearance.'"
The Defendant organizers made no promise to the Plaintiff to guaranty payment of an Employment Contract. The Plaintiff failed to show he was induced or sustantially [substantially] relied on such a promise.
Becoming a creditor did not make the organizers guarantors of payment in this case.
The court rejects the argument of the Plaintiff relating to promoter/organizers.
Accordingly, the court enters judgment in favor of the Defendants.
Frank S. Meadow State Trial Referee